UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS RAMOS, ED RODRIGUEZ, and EDWARD KRALICK, individually and on behalf of all other persons similarly situated who were employed by TELGIAN CORPORATION and any other entities affiliated with, controlling, or controlled by TELGIAN CORPORATION, <br><br> Plaintiffs, <br><br> - against - <br><br> TELGIAN CORPORATION and any other entities affiliated with, controlling, or controlled by TELGIAN CORPORATION, <br><br> Defendant. | Docket No.: 14-cv-03422-PKC-LB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR INTERLOCUTORY APPEAL OF THE COURTS MARCH 31, 2016**
**ORDER AND STAY OF THIS ACTION PURSUANT TO 28 U.S.C. § 1292(b)**

VIRGINIA & AMBINDER, LLP
Lloyd R. Ambinder
James Murphy
Jack Newhouse
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
Fax: (212) 943-9082
lambinder@vandallp.com
jmurphy@vandallp.com
jnewhouse@vandallp.com

*Attorneys for Plaintiffs and the Putative Collective*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 3

PLAINTIFFS HAVE MET THE STANDARD FOR
CERTIFICATION OF AN INTERLOCUTORY APPEAL

    A.    The Order Involves a Controlling Issue of Law ........................................... 3

    B.    There Is A Substantial Ground For Difference Of Opinions, As The
        Second Circuit Has Not Addressed These Questions, And Courts Apply
        Divergent Determinations ............................................................................ 6

    C.    An Immediate Appeal Would Materially Advance the Ultimate
        Termination of the Litigation and Promote Judicial ...........................10

CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

PAGE

## CASES

*Acumen Re Mgmt. Corp. v. General Sec. Nat'l Ins. Co.,*
  2016 U.S.Dist.LEXIS 28804 (S.D.N.Y. 2016) .......................................................... 4

*Al Maya Trading Establishment v. Global Exp. Mktg. Co.,*
  2014 U.S.Dist.LEXIS 96221 (S.D.N.Y. 2014) ......................................................... 3

*Anderson v. Mt. Clemens Pottery Co.,*
  328 U.S. 680 (1946) .............................................................................................. 14

*Ayers v. SGS Control Servs.,*
  2007 U.S.Dist.LEXIS 19634 (S.D.N.Y. 2007) ......................................................... 8

*Capitol Records, LLC v. Vimeo,* LLC,
  972 F.Supp.2d 500 (S.D.N.Y. 2013) ............................................................... *passim*

*Chen v. Major League Baseball Properties, Inc.,*
  798 F.3d 72, 81 (2d Cir. 2015) ............................................................................ 7, 9

*Costello v. Home Depot USA, Inc.,*
  944 F.Supp.2d 199 (D.Conn. 2013) ........................................................................ 7

*Geron v Robinson & Cole LLP,*
  2012 US Dist LEXIS 128678 (S.D.N.Y. 2012) ...................................................... 6, 9

*Glatt v. Fox Searchlight Pictures Inc.,*
  2013 U.S.Dist.LEXIS 139594 (S.D.N.Y. 2013) ..................................................... 11

*Goodrow v. Lane Bryant, Inc.,*
  432 Mass. 165 (2000) .............................................................................................. 8

*Guadagno v. Wallack Ader Levithan Assocs.,*
  950 F.Supp. 1258 (S.D.N.Y. 1997) ....................................................................... 13

*Heder v. City of Two Rivers,*
  295 F.3d 777 (7th Cir. 2002) ................................................................................... 7

*Hoffmann-La Roche, Inc. v. Sperling,*
  493 U.S. 165 (1989) .............................................................................................. 12

iii

*Hunter v. Sprint Corp.*,
   453 F. Supp.2d 44 (D.D.C. 2006) ........................................................... 7

*In re Currency Conversion Fee Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 16130 (S.D.N.Y. 2005) ...................................... 16

*In re Enron Corp.*,
   2007 U.S. Dist. LEXIS 70731 (S.D.N.Y. 2007) ...................................... 5

*In re Facebook, Inc.*
   986 F.Supp.2d 524 (S.D.N.Y. 2014) ....................................................... 3

*In re WorldCom, Inc.*,
   2003 U.S.Dist.LEXIS 11160 (S.D.N.Y. 2003) ........................................ 4

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*,
   2012 U.S. Dist. LEXIS 76660 (S.D.N.Y. 2012) ...................................... 12

*Mian v. GPM Investments, LLC*,
   896 F.Supp.2d 145 (D.Conn. 2012) ......................................................... 7

*Morgan v. Family Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir.2008) ................................................................ 13

*Morris v. Flaig*,
   511 F.Supp.2d 282 (E.D.N.Y. 2007) ....................................................... 3

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ..................................................................... 12

*Primavera Familienstifung v. Askin*,
   139 F.Supp.2d 567 (S.D.N.Y. 2001) ....................................................... 11

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of N.Y.*
   *Mellon*, 2013 U.S.Dist.LEXIS 20214 (S.D.N.Y. 2013) .......................... 5

*Salomon v. Adderley Indus.*,
   847 F. Supp. 2d 561 (S.D.N.Y. 2012) ...................................................... 12

*Sandifer v. U.S. Steel Corp.*,
   2010 U.S. Dist. LEXIS 635 (N.D.Ind. 2010) .......................................... 10

*Scott v. City of New York*,
   591 F.Supp.2d 554 (S.D.N.Y. 2008) ....................................................... 14

*Sebelius v. Cloer*,
   133 S. Ct. 1886 (2013) ............................................................................. 8

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   2010 U.S. Dist. LEXIS 3037 (S.D.N.Y. 2010) ......................................... 4

*Siegel v. Bloomberg L.P.*,
   2014 U.S.Dist.LEXIS 5602 (S.D.N.Y. 2015) ........................................... 6

*Spataro v. Gov't Employers Ins. Co.*,
   2014 U.S.Dist.LEXIS 109068 (E.D.N.Y 2014) ........................................ 6

*Transp. Workers Union, Local 100 v. N.Y.City Transit Auth.*,
   358 F.Supp.2d 347 (S.D.N.Y. 2005) ...................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*,
   2016 U.S.LEXIS 2134 (2016) ........................................................... 14, 15

*UFCW Local 1776 v. Eli Lilly & Co.*,
   253 F.R.D. 69 (E.D.N.Y. 2008) ............................................................. 17

*Wang v. Hearst Corp.*,
   2013 U.S.Dist.LEXIS 92091 (S.D.N.Y. 2013) .................................... 17, 18

*Watson v. Yolo County Flood Control & Water Conserv. Dist.*,
   2007 U.S. Dist. LEXIS 84934 (E.D.Cal. 2007) ...................................... 10

*Weber v. United States Trustee*, 484 F.3d 154 (2d Cir. 2007) ...................... 6

*Wechsler v. Hunt Health Sys., Ltd.*,
   1999 U.S. Dist. LEXIS 13216  (S.D.N.Y. 1999) ..................................... 13

*Wills v. RadioShack Corp.*,
   981 F.Supp.2d 245 (S.D.N.Y. 2013) ........................................................ 9

## Statutes

29 C.F.R 1292(b) ................................................................................*passim*

Code of Federal Regulations 29 C.F.R. § 778.114 ................................*passim*

Fair Labor Standards Act, 29 U.S.C. § 216(b) ........................ 4, 7, 12, 13, 14

PAGE

**Other Authorities**

*An Empirical Study of Class Action Settlements and Their Fee Awards*, 11, 12 tbl.2, 7 J. EMPIRICAL LEGAL STUD. (2010), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1442108 ..............................17

JORDAN MILEV ET AL., TRENDS 2010 YEAR-END UPDATE: SECURITIES CLASS ACTION FILINGS ACCELERATE IN SECOND HALF OF 2010; MEDIAN SETTLEMENT VALUE AT AN ALL-TIME HIGH 15 (2010), *available at* http://www.nera.com/nera-files/PUB_Year_End_Trends_l210.pdf ...................17

LYNN LANGTON & THOMAS H. COHEN, CIVIL BENCH AND JURY TRIALS IN STATE COURTS, 2005 7 (2008), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf /cbjtsc05.pdf ..........................................17

*Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2015) ................................................................16

THOMAS B. WILLGING, ET AL., EMPIRICAL STUDY OF CLASS ACTIONS IN FOUR FEDERAL DISTRICT COURTS, FINAL REPORT TO THE ADVISORY COMMITTEE ON CIVIL RULES 7 (1996), *available at* http://ftp.resource.org/courts.gov/fjc/rule23.pdf...................................................17

U.S. Department of Labor Field Operations Handbook § 32b04b(a) ...........................10

## PRELIMINARY STATEMENT

Plaintiffs Dennis Ramos, Ed Rodriguez, Edward Kralick, and Dan Emerson ("Plaintiffs"), respectfully request that the Court certify its March 31, 2016 Order ("the Order")[1] for immediate appeal, pursuant to 28 U.S.C. § 1292(b), and stay this action pending the determination of the appeal.  There are two controlling questions of law at issue in the Order, namely:

(1)     whether the "Fluctuating Work Week" ("FWW")[2] method of payment allowed under the Fair Labor Standards Act ("FLSA") requires that a worker's work week fluctuate both above and below 40 hours per week; and

(2)     whether the Telgian Corporation's ("Defendant") violation of the technical requirements of the FWW standard by failing to recalculate the employees' regular rate of pay on a week-to-week basis – recognized by the Court in its Order – renders the FWW payment methodology unavailable to Defendant.

In its Order, the Court made two key findings of law which *will* ultimately be the subject of an appeal by the Plaintiffs, regardless of whether that appeal occurs immediately, or after trial.[3] First, the Court held that, in order to avail itself of the FWW method of payment, a worker's workweek need not ever fluctuate below 40 hours in one week. [*See* Order, pp. 21-22, at Docket No. 50].  Second, the Court found that, regardless of the fact that Defendant admittedly engaged in a technical violation of the FWW requirements, this violation does not deprive the Defendant of the use of the FWW payment methodology, as the Court found that this "vaunts form over function." [*See* Order, p. 30].

In order for a Court to certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the Court must determine that: "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the

---

[1] The Order can be found at Docket No. 50.
[2] The FWW method of payment is governed by the Federal Regulation 29 C.F.R § 778.114 ("FWW Regulation").
[3] Critically, the need to appeal this Court's underlying findings prevents the parties from the possibility of amicably resolving this action, as the Plaintiffs are required to appeal this Court's determination, even if they prevail at trial on the remaining issues.

order may materially advance the ultimate termination of the litigation." As set forth below, these issues are controlling questions of law in this action. There is "substantial ground for difference[s] of opinion" about both of these controlling questions, and resolution on appeal will "advance the ultimate termination of th[is] litigation." 28 U.S.C. § 1292(b).  These questions are tailor-made for § 1292(b) review because neither the Supreme Court nor the Second Circuit have answered either of these specific questions, and this Court's Order is at odds with rulings of district courts in this Circuit and the rulings of other circuits. Further, there can be no question that resolution of these questions on appeal would "advance the ultimate termination of th[is] litigation," as without a certification for immediate appeal, this litigation could be subject to an extreme and costly procedural quagmire.

In response to the Court's March 31, 2016 Order, and absent a Court ordered stay, Plaintiffs will be moving for certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) and propagation of a notice to similarly-situated individuals of the pendency of this action. In the event that this Court declines to certify an immediate appeal, such a motion for certification would be followed by a trial on the issues of fact raised by the Court for the existing Plaintiffs and any further potential opt-in Plaintiffs; followed by a subsequent appeal to the Court of Appeals regardless of whether Plaintiffs win or lose at trial. If either of this Court's holdings are reversed by the Second Circuit at that point, the parties would then have to return to this Court and likely re-brief the issue of collective certification, as the Second Circuit's determination on these issues may have an impact on whom this Court may find to be "similarly situated" under 29 U.S.C. § 216(b). In addition, the Court would have to address the issue of at what point potential Plaintiffs' claims should be tolled from, and conduct a second trial covering many of the same issues as covered at the first trial.

Determining these purely legal issues, which have never been addressed by the Second Circuit, at this juncture will avoid the possibility of a second notice to the class and opt-in procedure, and a second trial. For the reasons that follow, it is respectfully requested that this Court enter an order certifying the Order for immediate appeal.

## ARGUMENT

## PLAINTIFFS  HAVE MET THE STANDARD FOR CERTIFICATION OF AN ORDER FOR INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292(b), the Court may permit a party to seek a permissive appeal of an interlocutory order if it finds that the "order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

A "district court may certify an order for interlocutory appeal when it is of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation… The movant bears the burden of demonstrating that all three of the substantive criteria are met." *Al Maya Trading Establishment v. Global Exp. Mktg. Co.*, 2014 U.S.Dist.LEXIS 96221, *37, (S.D.N.Y. 2014); *see also In re Facebook, Inc.*, 986 F.Supp.2d 524 (S.D.N.Y. 2014). Here, all three criteria are met.[4]

### A.  The Order Involves A Controlling Question Of Law

In connection with the first prong of the test, "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study

---

[4] As an initial matter, Plaintiffs' motion for certification of an interlocutory appeal is clearly timely. "Neither Section 1292(b) nor Fed. R. Civ. P. 5(a), which governs petitions for permission to appeal, specify a time in which a party must move for the order itself to be certified for interlocutory appeal. However, courts have held that any delay in seeking amendment and certification must be reasonable." *Morris v. Flaig*, 511 F.Supp.2d 282, 314 (E.D.N.Y. 2007). Here, Plaintiffs have moved for certification of leave to appeal only 14 days after the underlying order was enter.

the record. The question must also be 'controlling,' meaning that reversal of the district court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *See Capitol Records, LLC v. Vimeo, LLC*, 972 F.Supp.2d 500, 551 (S.D.N.Y. 2013) (internal citations and punctuation omitted); s*ee also In re WorldCom, Inc.*, 2003 U.S.Dist.LEXIS 11160, *29 (S.D.N.Y. 2003) ("In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record.") (internal punctuation omitted); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2010 U.S. Dist. LEXIS 3037, *3 (S.D.N.Y. 2010) ("controlling questions of law" involve purely legal issues that the Second Circuit can decide "without having to conduct extensive analysis and review of the underlying record"); *Acumen Re Mgmt. Corp. v. General Sec. Nat'l Ins. Co.*, 2016 U.S.Dist.LEXIS 28804, *7 (S.D.N.Y. 2016).

Here, the Court's holding that Plaintiffs' schedules "fluctuated" as contemplated by the FWW Regulation was premised on the finding of law that a worker's regular workweek need not ever fluctuate below forty hours per week in order to be "fluctuating" within the meaning of 29 C.F.R. § 778.114.  [Order, at pp. 21-22]. Indeed, there is no dispute that Plaintiffs' workweeks entirely, or almost entirely, exceeded forty hours of work. Regardless, no extensive factual analysis of the underlying record is necessary by the Second Circuit in order to determine the meaning of the term "fluctuate" for purposes of the FWW Regulation.

Similarly, there is no dispute – and, indeed, the Court has already held – that Defendant failed to recalculate Plaintiffs' regular rates of pay each week based on the number of hours Plaintiffs actually worked, and that such failure was a "technical violation of the FWW." [Order, p. 30].  Nevertheless, the Court held that this violation "vaunts form over function" and does not

4

preclude Defendant from utilizing the FWW method to calculate Plaintiffs' regular rates of pay. Accordingly, the issue before the Second Circuit is purely legal: namely, whether it is permissible for Defendant to utilize the FWW method without recalculating Plaintiffs' regular rates of pay on a week to week basis. "[T]his issue presents a controlling question of law. Because the issue turns almost exclusively on a question of statutory interpretation, the reviewing court could decide it quickly and cleanly without having to study the record." *Capitol Records, LLC*, 972 F.Supp.2d at 552.

There can also be no dispute that the "determination of the issue on appeal would materially affect the litigation's outcome." *In re Enron Corp*., 2007 U.S. Dist. LEXIS 70731, *7 (S.D.N.Y. 2007); *see also Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 2013 U.S.Dist.LEXIS 20214, *15 (S.D.N.Y. 2013) (an issue "is controlling because reversal of the… Order, even though not resulting in dismissal, could significantly affect the conduct of the action") (internal punctuation omitted). Indeed, the parties bifurcated individual and collective discovery in order to first resolve the issue of whether the FWW method was properly implemented prior to wasting precious time and resources on potentially unnecessary collective-wide discovery. [*See* Docket No. 13]. The same reasoning can be applied here. Absent an interlocutory appeal, a post-judgment appeal of this Court's rulings will follow regardless of the outcome at trial. Any modification of this Court's rulings by the Court of Appeals would require a second notice period and opportunity to "opt-in" pursuant to 29 U.S.C. § 216(b); a determination of when potential opt-ins' claims should be tolled from for statute of limitations purposes (potentially done years after the fact); and a second trial, which would be required to address many of the same issues previously addressed in the first trial. This would involve an enormous waste of scarce judicial resources – one of the main consequences the interlocutory

appeal process is designed to avoid. *See Weber v. United States Trustee*, 484 F.3d 154, 159 (2d Cir. 2007) (Congress passed 28 U.S.C. § 1292(b) "to avoid protracted litigation… [and] to assure the prompt resolution of knotty legal problems"); *Geron v Robinson & Cole LLP*, 2012 US Dist LEXIS 128678, *30 (S.D.N.Y. 2012) (certification of an appeal is appropriate where "the prompt resolution of these issues on appeal will promote judicial economy"). Accordingly, Plaintiffs respectfully request that the Court certify Plaintiffs' application for an interlocutory appeal.

### B. There Is A Substantial Ground For Difference Of Opinions, As The Second Circuit Has Not Addressed These Questions, And Courts Apply Divergent Determinations

In order for a Court to certify an order for interlocutory appeal, the Court must find that there are "substantial grounds for difference of opinion" as to the outcome. "The second prong of the test, that there exists a substantial ground for difference of opinion, is met when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC*, 972 F.Supp.2d at 551. Here, there is conflicting authority on the issue, *and* it is one of first impression for the Second Circuit. "[T]he Second Circuit has never commented on the FWW method." *Siegel v. Bloomberg L.P.*, 2014 U.S.Dist.LEXIS 5602 (S.D.N.Y. 2015).

This Court determined that there is no requirement under the FWW methodology that a worker's hours must vary below 40 per week in order for an employer to utilize the FWW methodology. Other courts from within this Circuit and outside this Circuit have held to the contrary. *See generally Spataro v. Gov't Employers Ins. Co.*, 2014 U.S.Dist.LEXIS 109068, *9 (E.D.N.Y. 2014) ("the FWW method may be used only where the employee's hours actually fluctuate above and below the normal forty-hour workweek"); *Costello v. Home Depot USA, Inc.*, 944 F.Supp.2d 199, 208 (D.Conn. 2013) ("the general spirit of what a FWW alternative method attempted to achieve" requires some weeks far above forty hours and some less than forty hours);

*Mian v. GPM Investments, LLC*, 896 F.Supp.2d 145, 150 (D.Conn. 2012) ("For a fluctuating work week arrangement to make sense to both parties, employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work"); *see also Blotzer v. L-3 Communs. Corp.*, 2012 U.S.Dist.LEXIS 173126, *40-41, (Dist.Ariz. 2012) ("The FWW was intended to apply to 'fluctuating' work schedules, *ie.* schedules in which an employee endures long hours some weeks but enjoys the benefit of short hours in other weeks, all at the same rate of pay. In the present case, it is undisputed that Plaintiffs consistently worked more than 40 hours per week. Thus, Plaintiffs' variance, between weeks with a moderate amount of overtime hours, and weeks where a majority of hours worked exceeded the 40 hour threshold, is not the same as the up and down fluctuation contemplated by the DOL and by the Court in *Missel.*") (internal citations and punctuation omitted); *Heder v. City of Two Rivers*, 295 F.3d 777, 779-780 (7th Cir. 2002); *Hunter v. Sprint Corp.*, 453 F. Supp.2d 44, 61 (D.D.C. 2006).

It cannot be disputed that "[b]ecause the FLSA is a remedial law, exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 81 (2d Cir. 2015). Courts in this Circuit have held that "the general spirit of what a FWW alternative method attempted to achieve" requires some weeks far above forty hours and some less than forty hours. *Costello*, 944 F.Supp.2d at 208. Clearly then, a substantial ground for difference of opinion on this issue exist, especially where the Second Circuit has issued no opinions whatsoever regarding the issue.

Likewise there is a substantial ground for differing opinions over whether Defendant is

permitted to avail itself of the FWW method even though it did not recalculate Plaintiffs' regular rates of pay each week based on the hours Plaintiffs actually worked. Indeed, in the Court's Order, the Court even recognized, based on the "clear language of the regulation" and guidance from the Department of Labor, that the requirement to recalculate Plaintiffs' regular rates of pay each week is mandatory. [Order, pp. 28-29]. Furthermore, the last sentence in the 1967 version of the US Department of Labor Field Operations Handbook § 32b04b(a) ("FOH") expressly permitted the calculation method utilized by Defendant, stating "[i]f the employer to avoid weekly computations chooses to pay extra half-time based on the salary divided by 40 hours, such a method is permissible." Just one year later, however, the Department of Labor promulgated the FWW Regulation, 29 C.F.R. § 778.114. The text of the FWW Regulation was nearly identical to that of FOH § 32b04b(a), except it omitted the last sentence that permitted an employer to "avoid weekly computations." *See Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 167-68 (2000) (explaining that "this policy, ***minus*** the last sentence, was memorialized in 29 C.F.R. § 778.114, entitled 'Fixed salary for fluctuating hours,' promulgated on January 26, 1968"). When a later regulation omits words included previously in the law, such omission is meaningful and was done with full knowledge and approval of its effect. *See Sebelius v. Cloer*, 133 S. Ct. 1886, 1894 (2013).

In addition, other courts in this Circuit have held that additional payments to workers above and beyond their normal weekly salary plus calculated overtime payments violates the FWW method and results in the employer's loss of the right to use it. *See Wills v. RadioShack Corp.*, 981 F.Supp.2d 245, 261 (S.D.N.Y. 2013) ("courts had overwhelmingly held that § 778.114 forbade the FWW method where hours-based premium pay caused a worker's pay to vary by hours worked"); *Ayers v. SGS Control Servs.*, 2007 U.S.Dist.LEXIS 19634, *33 (S.D.N.Y. 2007) ("any Plaintiff who received sea pay or day-off pay did not have 'fixed' weekly straight time pay, in violation of

29 C.F.R. § 778.114(a)"). While this Court held that reliance on Defendant's miscalculations to remove their ability to rely upon the FWW method "vaunts form over function," other Courts have recognized that the FWW requirements "are to be interpreted narrowly against the employer… and the employer bears the burden of showing that an exception applies." *Id.* Once again, as stated by the Second Circuit in *Chen,* the application of exemptions to the FLSA are "limited to those establishments plainly and unmistakably within their terms and spirit." *Chen*, 798 F.3d at 81. Here, as the Court has already recognized, the clear language of the regulation and supporting guidance by the Department of Labor mandate recalculation of an employee's regular rate of pay on a weekly basis.

The lack of guidance from the Second Circuit and the variations among courts in this District and other Circuits underscore the substantial grounds for differences of opinion sufficient to warrant certification of the Order.  Courts in this Circuit have acknowledged such a basis for certifying immediate appeals in the past.  *See, e.g., Geron*, at 745 (S.D.N.Y. 2012) (granting certification where, *inter alia,* the "issues impact a large number of cases, and they present substantial  grounds for difference of opinion").  Other district courts have likewise certified pure legal issues concerning liability under the FLSA prior to final judgment, when intra-district or intra-circuit splits occur.  *See e.g., Watson v. Yolo County Flood Control & Water Conserv. Dist.*, 2007 U.S. Dist. LEXIS 84934*8-10, (E.D.Cal. 2007) (granting certification of interlocutory appeal regarding the applicability FLSA exemption and acknowledging a "paucity" of relevant case law and an intra-district split); *Sandifer v. U.S. Steel Corp.*, 2010 U.S. Dist. LEXIS 635 (N.D.Ind. 2010) (granting certification of FLSA issues because, *inter alia*, some courts held the same as it has, while other courts and the DOL concluded to the contrary, constituting "substantial grounds for differences of opinion").

The fact that multiple courts within this District have come to contrary holdings on these issues, and that the Second Circuit has never addressed them, means that substantial grounds for difference of opinion exist as defined under 12 U.S.C. § 1292(b). *See Capitol Records, at* 552 ("although the Court remains of the view that *17 U.S.C. § 301(c)* cannot be read to permit application of the DMCA Safe Harbor to pre-1972 recordings, the Court recognizes that there exists a substantial ground for difference of opinion on this issue. Indeed, Judge Pauley of this Court reached the opposite conclusion… In view of the paucity of case law and these conflicting conclusions, the Court finds that the second statutory factor has been satisfied.").

### C. An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation and Promote Judicial Economy

The final criteria for certification of an interlocutory appeal is whether "resolution of this issue will materially advance the termination of this case." *Transp. Workers Union, Local 100 v. N.Y.City Transit Auth.*, 358 F.Supp.2d 347, 353 (S.D.N.Y. 2005). Determination of pure issues of law on FLSA exemptions in cases such as this one are particularly appropriate for interlocutory appeal. As Justice Pauley of the Southern District recently held:

> The appropriate [exemption] standard affects class certification; certification of the FLSA collective action; summary judgment granted in favor of [Plaintiffs]; and anticipated summary judgment motions for additional plaintiffs, the NYLL class, and the FLSA collective. Use of a different standard may obviate some of these steps, require decertification of the class or collective action, or simplify the issues for trial. Resolving this question now also avoids the possibility that a post-trial appeal would require a new trial applying a different standard. An immediate appeal therefore is likely to advance the ultimate termination of the litigation.

*Glatt v. Fox Searchlight Pictures Inc.*, 2013 U.S.Dist.LEXIS 139594, *6-7 (S.D.N.Y. 2013).

Here, all of these factors are in play. In the absence of an interlocutory appeal, Plaintiffs will shortly be moving for collective-action certification under 29 U.S.C. § 216(b), and thereafter will be conducting further discovery, and proceeding to trial, followed by an appeal of this Court's

determination regardless of the outcome at trial. In the event the Second Circuit then modifies either of this Court's determinations, this entire process would need to be repeated. "The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *Primavera Familienstifung v. Askin*, 139 F.Supp.2d 567, 570 (S.D.N.Y. 2001).

Regarding the first step of the upcoming litigation course, the FLSA, 29 U.S.C. § 216(b), provides in pertinent part that:

> [a]n action…may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

This provision of the FLSA has been interpreted to establish an "opt-in" scheme in which plaintiffs must affirmatively notify the court of their intentions to be a party to the suit. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367-69 (S.D.N.Y. 2007). The purpose of this provision allows for an early and orderly prosecution of this action by advising all potential collective action members of its pendency, and the basic nature of the claims. Furthermore, it insures against inconsistent results through competing lawsuits by other aggrieved workers who may be contemplating legal action.

Importantly, early notice helps to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case. This reasoning has repeatedly been applied in FLSA collective actions similar to the instant action. *See e.g. Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, 2012 U.S. Dist. LEXIS 76660, *4-5 (S.D.N.Y. 2012) ("The Supreme Court has recognized that the benefits of collective action accrue to plaintiffs only if they 'receiv[e] accurate and timely notice concerning the pendency of

the collective action'… [C]ourt-authorized notice is appropriate to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy.") (*quoting Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). In the event that any of this Court's determinations are modified after appeal, the question of collective action notice and certification would have to be re-litigated, including a determination on equitable tolling issues regarding the propriety of tolling of the claims of potential opt-in Plaintiffs who might not have been part of the initial group provided with notice and opportunity to opt-in, should the Court grant the Plaintiffs' motion for collective action certification.

Further, Court-authorized notice to potential class members generally occurs prior to full blown collective wide merits discovery, where courts determine whether the potential plaintiffs in a class action are "similarly situated" in accordance with 29 U.S.C. § 216(b). *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) (*citing Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)). To show that they are "similarly situated" Plaintiffs "need only make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* Plaintiffs can satisfy their burden by showing that "'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Id.* (*quoting Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1258-62 (11th Cir.2008)).

The factors which this Court would have to address, however, in determining Plaintiffs' motion for collective certification and publication of an opt-in notice, may materially differ should the Second Circuit modify this Court's holdings after a post-judgment appeal by Plaintiffs, and would have to be litigated twice and determined twice by this Court, potentially resulting in a second notice and opt-in period being provided to an entirely different group of potentially

similarly situated individuals. In addition, following the notice stage, further collective-wide merits discovery needs to be conducted. In the event that the Second Circuit modifies this Court's Order, that discovery – following a second notice and opt-in period – would need to be conducted again, as the issues determining Defendants' potential liability and the potential damages available to Plaintiffs may change.

Finally, assuming no motion for decertification or other motions for summary judgment are filed, the parties will need to prepare their pre-trial submissions, and proceed to trial. As the parties prepare for trial, a number of pre-trial determinations will need to be litigated. Among them are the admissibility of information shared by the parties during the discovery phase of the litigation. Generally, answers to interrogatories "are treated by courts in this Circuit as 'judicial admissions' that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." *Wechsler v. Hunt Health Sys., Ltd.*, 1999 U.S. Dist. LEXIS 13216, at *2 (S.D.N.Y. 1999); *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) (stating that interrogatory responses are generally treated as judicial admissions, and that "[a] judicial admission is conclusive, unless a court allows it to be withdrawn"), *aff'd* 125 F.3d 844 (2d Cir. 1997). The discovery demands and responses required at this juncture of the litigation will substantively differ between those which would be exchanged in the event that the Second Circuit modifies, now or after trial, either of the Court's determinations challenged here by Plaintiffs. The issue of what discovery demands are made and responded to, as well as what responses or admissions are admissible at trial, would need to be litigated twice.

Further, the issue of what evidence Plaintiffs must provide in order to prove their case will have to be litigated twice, in the event this action is not certified for an interlocutory appeal. The burden Plaintiffs must meet in wage and hours cases was set forth by the United States Supreme

Court in the seminal case of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  There, the Supreme Court held that: "[t]he remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee." *Id.* at 687. *See also Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 194 L.Ed.2d 124, 2016 U.S.LEXIS 2134 (2016). The evidence which the Plaintiffs will have to put forth under the Court's current holdings will substantially and materially differ from that which they would be required to put forth under a potentially revised standard at a second trial following a potential modification by the Second Circuit after the first trial. Courts are required to rule on a number of factors regarding trial requirements in FLSA trials, including the admissibility of expert testimony, the amount and type of representative evidence required to be put forth, and the effect of compliance or non-compliance with discovery obligations by opt-in Plaintiffs. *See e.g., Scott v. City of New York*, 591 F.Supp.2d 554 (S.D.N.Y. 2008). Determinations which would substantively and materially differ in the event that a second trial is held in this action following a post-judgment appeal, and would thus have to be litigated and determined by this Court twice.

In this District, the median time for a civil case to go to trial after filing in 2015 was 31.4 months. *See Table N/A – U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2015), *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1. Class or collective actions, of course, take a substantially longer time to reach trial than ordinary civil actions. *See* LYNN LANGTON & THOMAS H. COHEN, CIVIL BENCH AND JURY TRIALS IN STATE COURTS, 2005 7 (2008), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf /cbjtsc05.pdf ("Class actions are unique in that they tend to take longer to process than regular civil trials. In 2005, the 14 class action trials lasted 17 days

on average. The total time from filing to disposition averaged *3.5* years.");[5] THOMAS B. WILLGING, ET AL., EMPIRICAL STUDY OF CLASS ACTIONS IN FOUR FEDERAL DISTRICT COURTS, FINAL REPORT TO THE ADVISORY COMMITTEE ON CIVIL RULES 7 (1996), *available at* http://ftp.resource.org/courts.gov/fjc/rule23.pdf (on average, class actions take two to three times as long to litigate, from filing to disposition, as do civil non-class actions); JORDAN MILEV ET AL., TRENDS 2010 YEAR-END UPDATE: SECURITIES CLASS ACTION FILINGS ACCELERATE IN SECOND HALF OF 2010; MEDIAN SETTLEMENT VALUE AT AN ALL-TIME HIGH 15 (2010), *available at* http://www.nera.com/nera-files/PUB_Year_End_Trends_l210.pdf; Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 11, 12 tbl.2, 7 J. EMPIRICAL LEGAL STUD. (2010), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1442108

The many phases to follow in the course of this litigation – including the issuance of collective action notice, motion practice, and discovery concerning damages and willfulness – will be executed with far greater speed and certainty if the Second Circuit provides direction on the questions that will pervade them.  A change in the standard that comes sooner in the litigation process could even stand to obviate certain steps in the litigation, further accelerating its termination without leaving open questions as to the propriety of the terms of its resolution.  Because a revised legal standard would necessarily impact the Court's rulings, it is clear that those questions should be resolved prior to final judgment.  Moreover, such resolution will advance judicial economy by requiring only one Court to familiarize itself with the facts of this case, rather than having

---

[5] The procedures for evidentiary determinations at trial are similar for class actions and collective actions. *See generally Tyson Foods, Inc. v. Bouaphakeo*, 2016 U.S.LEXIS 2134 (2016) (The parties do not dispute that, in order to prove a violation of the Iowa statute, the employees had to do no more than demonstrate a violation of the FLSA. In this opinion, then, no distinction is made between the requirements [at trial] for the class action raising the state-law claims and the collective action raising the federal claims").

"piecemeal appeals" as to various issues that will require the involvement of multiple courts. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 2005 U.S. Dist. LEXIS 16130*19 (S.D.N.Y. 2005) ("Certification of an interlocutory appeal advances the interests of sound judicial economy by having one three-judge panel familiarize itself with this case, instead of having piecemeal appeals that require two (or more) three-judge panels") (internal punctuation omitted).

Many of the issues which this Court and the litigants will be required to address in the remaining course of the litigation are dependent upon a ruling on the issues outlined above, which will be appealed to the Second Circuit, regardless of whether that appeal occurs now, or after trial. A narrowing of the issues to be further litigated would accomplish the goal of judicial economy, by obviating the need to re-litigate issues should the Second Circuit modify either of this Court's holdings. *See, e.g. Capitol Records, LLC*, at 552. "If the Second Circuit provides clarification or a different legal standard, it will guide a resolution of the outstanding issues pending in the Circuit. As the cases suggest, an appeal should be considered if it will advance the ultimate termination of the litigation." *Wang v. Hearst Corp.*, 2013 U.S.Dist.LEXIS 92091, *7 (S.D.N.Y. 2013).

Certification for interlocutory appeal is appropriately granted where a summary judgment decision "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation." *UFCW Local 1776 v. Eli Lilly & Co.*, 253 F.R.D. 69 (E.D.N.Y. 2008). Here, it cannot be argued that determination of this issues which will be appealed to the Second Circuit by Plaintiffs following a judgment at trial – even if that judgment is in their favor – will materially advance the ultimate termination of the litigation, and avoid the waste of scarce judicial resources. For this reason, it is respectfully requested that this Court issue an Order certifying this matter for interlocutory appeal pursuant to 12 U.S.C. § 1292(b). Further, for these

same reasons, should this Court grant Plaintiffs' motion, it is respectfully requested that this Court issue a stay of the proceedings pending the appeal. *See, e.g. Wang*, at 7 ("The underlying case will be stayed during the pendency of this motion and if the appeal is granted the stay will continue to the date of the Circuit's decision").

## **CONCLUSION**

Wherefore, for the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiffs' application for interlocutory appeal of the Court's March 31, 2016 Order, and stay this action pending the Second Circuit's review.

Dated: New York, New York
April 14, 2016

VIRGINIA & AMBINDER, LLP

By:_____/s/_____

Lloyd Ambinder, Esq.
James Murphy, Esq.
Jack Newhouse, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

17