UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DENNIS RAMOS, ED RODRIGUEZ, EDWARD
KRALICK, and DANIEL EMERSON, individually
and on behalf of all other persons similarly situated
who were employed by TELGIAN CORPORATION
and any other entities affiliated with, controlling,
or controlled by TELGIAN CORPORATION,

          **MEMORANDUM & ORDER**
    Plaintiffs,       14–CV–3422 (PKC)

   -against-

TELGIAN CORPORATION and any other entities
affiliated with, controlling, or controlled by
TELGIAN CORPORATION,

    Defendant.
-----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

  Plaintiffs Dennis Ramos, Ed Rodriguez, Edward Kralick, and Daniel Emerson ("Plaintiffs") brought this action to recover, on behalf of themselves individually and all similarly situated individuals, unpaid overtime compensation from Defendant Telgian Corporation ("Defendant" or "Telgian"), under Sections 207 and 216 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b), and, individually, unpaid overtime and spread-of-hours compensation under the New York Labor Law ("NYLL"), NYLL § 663, and the New York Codes, Rules, and Regulations ("NYCRR"), 12 NYCRR §§ 142-2.2, 142-2.4. The parties cross-moved for summary judgment, and on March 31, 2016, the Court denied Plaintiffs' motion, and granted in part and denied in part Defendant's motion. *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 204 (E.D.N.Y. 2016) ("3/31/16 Order"). On the question of whether Defendant had properly compensated Plaintiffs pursuant to the Fluctuating Workweek ("FWW") scheme, the Court found that there remained two issues of fact to be determined by a jury—first, whether Defendant had met the second element of the FWW scheme by paying Plaintiffs their fixed salaries regardless of

the number of hours worked, and second, whether Defendant had met the fourth element of the FWW scheme, *i.e.*, whether there existed a clear mutual understanding that Plaintiffs' fixed salaries were intended to compensate them for every hour actually worked, rather than for some fixed number of hours.

In its present motion for reconsideration, Defendant argues that the Court overlooked controlling facts and law that warrant granting Defendant's summary judgment motion in full. Based on the parties' submissions and for the reasons stated below, the Court GRANTS Defendant's motion with respect to the second element of the FWW scheme as to Plaintiff Kralick, but otherwise DENIES reconsideration.

## I.     LEGAL STANDARD

A court may grant reconsideration on the basis of an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The standard for granting a reconsideration motion is "strict," and reconsideration generally will be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.), *as amended* (July 13, 2012) (quotations omitted). Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration. *See Image Processing Techs., LLC v. Canon Inc.*, 10-CV-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) ("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the

2

Court' on a motion for reconsideration.") (quoting *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 115 (2d Cir. 1991)).

## II. THE COURT GRANTS IN PART AND DENIES IN PART RECONSIDERATION ON ELEMENT 2 OF THE FWW SCHEME

The Court reverses its denial of summary judgment on the second element of the FWW scheme as to Plaintiff Kralick, but denies reconsideration of this element as to the other Plaintiffs, albeit with some additional explanation.

The Court's denial of summary judgment on this element was based on paystubs submitted into evidence that seemed to belie Defendant's assertion that Plaintiffs received a fixed weekly salary regardless of the hours worked. (Dkt. 39, Exhibit A, at ECF 9, 11, 21; Exhibit B, at ECF 32, 35, 36, 40, 44, 46, 49, 52; Exhibit D, at ECF 39, 41, 45, 46, 50, 52, 54, 58, 64, 66.)[1] The Court specifically pointed to paystubs in which the stated "regular" earnings were lower than Plaintiffs' salaries. (*i.e.* Dkt. 39, Exhibit A, at ECF 9, 11, 21.)

As to Plaintiff Kralick, however, Defendant correctly points out that Kralick's paystubs did not include pay periods where Kralick's "regular" earnings were less than his stated salary. (Dkt. 39, Exhibit C, ECF 2–18.) Because the Court previously overlooked this material fact, it reverses the denial of summary judgment to Defendant on this element with respect to Plaintiff Kralick.[2]

Regarding the other Plaintiffs, the Court affirms its previous finding that "there is no evidence in the record that would permit the Court to determine," in each instance where a

---

[1] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[2] The parties are reminded, however, that Plaintiff Kralick's FLSA claim will still proceed to trial because of the remaining disputed issue of fact regarding the fourth element of the FWW scheme as to him. *See* 3/31/16 Order, 176 F. Supp. 3d at 198.

3

paycheck listed a Plaintiff's "regular" earnings as lower than the normal salary, whether Defendant was complying with the FWW scheme. (3/31/16 Order, 176 F. Supp. 3d at 196–97.)[3]

The Court takes this opportunity to clarify its finding on this point. The paystubs at issue broke down gross earnings into categories such as "regular," "OT" (or "Halftime OT"), "subsistence," "holiday," "floating holiday," and "leave." (*See, e.g.*, Dkt. 39, Exhibit A, at ECF 9, 11, 21.) While these paystubs might be subject to an interpretation that does not violate the FLSA, Defendant failed to offer this explanation in briefing its summary judgment motion, and it would be improper for the Court to consider this new argument now.[4] On reconsideration,

---

[3] The Court excludes from this discussion paystubs where the gross pay was pro-rated because they covered weeks where Plaintiffs began or ended their employment mid-week, and grants summary judgment to Defendants with regard to these paystubs. Such pro-rating is permissible; "an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment" without violating the salary basis requirement. 29 C.F.R. § 541.602(b)(6). The Court finds that these pay stubs (*i.e.* Dkt. 39, Exhibit A, at ECF 2, 21) when viewed alongside facts about when Plaintiffs' employment began and ended (Dkt. 35 (Pl. 56.1 Statement), at ¶ 1; Dkt. 30 (Def. 56.1 Statement), at ¶ 2), lead to a finding that the only reasonable interpretation of those paystubs is that they constitute permissible pro-rating during Plaintiffs' first and final weeks of employment.

[4] *See Image Processing Techs., LLC*, 2012 WL 253097, at *1 ("[A] party is not permitted to 'advance new . . . arguments not previously presented to the Court' on a motion for reconsideration.") (quotation omitted)). Defendant argues that they did not make these arguments earlier because "Plaintiffs *never* raised this argument anywhere in their voluminous motion briefs, and therefore [Defendant] was not provided with an opportunity to be heard on the issue prior to the Order." (Dkt. 79 at 6 (emphasis in original).) However, as Plaintiffs correctly point out, it "was Defendant's burden as the moving party to establish . . . there is no genuine issue as to any material fact." (Dkt. 77, at 4.) These paystubs were submitted into evidence and showed that there were weeks that Plaintiffs were paid amounts that varied from their stated salaries. Given that Defendant was moving for summary judgment on the theory that Plaintiffs were lawfully paid pursuant to the FWW scheme, the burden was on it to explain why these fluctuations did not violate the FWW scheme.

Plaintiffs likewise did not explain how to interpret these paystubs or why the holiday and other leave payments should not be considered part of their salaries. (*See* Dkt. 38-1 (Plaintiffs' Response to Defendant's 56.1 Statement, Plaintiffs), at ¶ 7 (simply citing to holiday and leave time paystubs, as well as pro-rated paystubs for final weeks of work, in support of claim that Plaintiffs were not "*always* . . . paid their full salary when they worked under 40 hours in a week").)

Defendant explains for the first time that although certain pay stubs showed lower regular pay amounts, Plaintiffs, in fact, were paid the same or more than their normal salary because they also received pay from their holiday or leave banks, as indicated in those pay stubs.  The reason, Defendant further explains, that Plaintiffs sometimes received more than their regular pay is that leave pay was paid in eight-hour increments regardless of the actual amount of leave the employee used.  Thus, if an employee used less than eight hours of leave, he received more than his regular salary for that pay period.  (Dkt. 79, at 6–9; 12–16).  Defendant points to a Department of Labor Opinion Letter that explains, "deductions may be made from vacation or sick leave banks because of absences for personal reasons or illness, as long as no deductions are made from an employee's salary" and as long as "where there is no paid leave to substitute for employee absences, the employer [does] not make deductions from the employee's guaranteed fixed salary under the [FWW] method of compensation."  U.S. Dep't of Labor Wage & Hour Op. Letter, 1999 WL 1002399, at 2 (May 10, 1999) ("1999 DOL Opinion Letter").[5]

Even if the Court were to consider Defendant's belated argument, it would still deny summary judgment, because a jury could interpret the "holiday" and "leave" amounts in the

---

[5] Consistent with the 1999 DOL Opinion Letter, courts have found that reducing holiday and leave banks when a FWW employee works less than 40 hours per week does not violate the FWW scheme.  *See, e.g.*, *Griffin v. Wake Cnty.*, 142 F.3d 712, 718 (4th Cir. 1998) (finding that an employer's deductions from leave and vacation balances when employees work less than 40 hours in a week did not violate the FWW); *Aiken v. Cnty. of Hampton*, 172 F.3d 43 (4th Cir. 1998) (table) (same); *Teblum v. Eckerd Corp. of Fla., Inc.*, 2006 WL 288932, at *8 (M.D. Fla. 2006) (finding that Defendant did "not run afoul of [the FWW regulation] simply by making deductions from an FWW employee's nonproductive time bank for hours an employee does not actually work so long as the employee receives the same weekly base salary"); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 737 (S.D. Ohio 2006) (finding the fixed salary requirement under FWW met even though on weeks when Plaintiffs worked less than 40 hours, their accrued paid benefit time was reduced by the number of hours below 40, because they received their full salaries on those weeks); *see also Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066 (D.N.J. 2010) (explaining that "[a]n employer may deduct from an FWW employee's vacation time bank for workdays missed, but may not deduct from the fixed salary for time an FWW employee misses from work" (citing 1999 DOL Opinion Letter)).

paystubs as reflecting holiday and leave *premiums* for hours worked on holidays and days off, and could find that Plaintiffs' "regular" earnings were impermissibly reduced for other reasons—which would violate the FWW scheme. "[A]lmost every court to have addressed the issue has held that paying an employee hours-based, or time-based, bonuses and premiums—such as extra pay for holiday, weekend, or night work—offend[s] § 778.114's requirement of a 'fixed weekly salary.'" *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255–56 (S.D.N.Y. 2013). *See O'Brien v. Town of Agawam*, 350 F.3d 279, 289–90 (1st Cir. 2003) (holding that employees did not receive a "fixed amount" under FWW element two when they were paid additional compensation for nighttime shifts and for other hours worked on otherwise off-duty time); *Lane v. Crescent Servs., LLC*, 2:12-CV-368, 2013 WL 12106124, at *5 (S.D. Tex. Sept. 17, 2013) ("Payment of an off-shore, day-off, holiday, or shift premium to an employee violates the FLSA requirement that the employee receive a fixed salary and precludes application of the FWW method of compensation."); *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 889–91 (S.D. Tex. 2011) (finding that Defendant did not satisfy the requirements for FWW when employees would earn premiums when they worked on a scheduled day off or holiday); *Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066, at *6 (D.N.J. 2010) (same); *Adeva v. Intertek USA, Inc.*, 2010 WL 97991, at *3 (D.N.J. 2010) (same); *Ayers v. SGS Control Servs., Inc.*, 03-Civ.-9077, 2007 WL 646326, at *8–10 (S.D.N.Y. Feb. 27, 2007) (holding that employees did not receive a fixed salary under FWW because they received lump-sum "day-off pay" for working on their days off); *see also Bacon v. Eaton Aeroquip, LLC*, 2014 WL 5090825 (E.D. Mich. 2014) (explaining that the Department of Labor rejected a rule that would have permitted hours-based or time-based bonuses and premiums,

6

and thus intended to leave in place the prohibition found by the majority of courts) (citing *Wills*, 981 F. Supp. 2d at 260–63)).[6]

Because the jury, based on the evidence in the record, could reach alternative conclusions about how Defendant paid Plaintiffs during the pay periods documented by the paystubs with "holiday" and "leave" designations, Defendant is not entitled to summary judgment on this element of the FWW scheme.[7]

---

[6] In *Wills*, the court explained that part of the problem with holiday-based premiums was that "when an employer pays its employees additional money for hours worked during weekends, holidays, or nights, the employees who work such premium hours will earn more than those who work normal, non-premium hours." *Wills*, 981 F. Supp. 2d at 256; *see also Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1 (1st Cir. 2016) (making the same distinction). When the DOL chose not to implement a rule allowing payment of hours-based premiums, the DOL similarly reasoned that the proposed regulation could have "had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay *depending on the particular hours worked*." *Wills*, 981 F. Supp. 2d at 261 (quoting 76 Fed. Reg. at 18850 (emphases added)).

In contrast, there is no FWW violation when an employer pays additional *overtime* for holidays or for other reasons. 29 C.F.R. § 778.114 ("Where all the legal prerequisites for use of the [FWW] method of overtime payment are present, the [FLSA], in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more"); *see also Stein v. Guardsmark, LLC*, 12-Civ.-4739, 2013 WL 3809463, at *4–7 (S.D.N.Y. July 23, 2013) (concluding that payment of overtime "does not compromise a finding that an employee was paid on a 'salary basis'"); *Wright v. Aargo Sec. Servs., Inc.*, 99-Civ-9115, 2001 WL 91705, at *5 (S.D.N.Y. Feb. 2. 2001) (finding that "courts have consistently held that an employee's receipt of additional amounts, including overtime, above his predetermined base compensation does not destroy the employee's otherwise valid salary status"); DOL Opinion Letter, 2002 WL 32255314 (Oct. 31, 2002) (stating that an employer may pay employees more than the minimum calculated rate under the FWW method for overtime); *cf. Rivera v. Anjost Corp.*, 645 Fed. App'x 30, 31 (2d Cir. 2016) (summary order) (explaining that "additional compensation for additional work does not impair exempt status" under the executive exemption from FLSA's overtime requirements).

[7] Furthermore, Defendant's belated explanation about the pay periods at issue raises the unsettled legal question of whether applying leave or holiday time in a manner that occasionally increases a salary *above* the fixed rate violates the FWW requirement that a salary be "fixed." None of the cases upholding the use of holiday or leave banks addressed a situation in which a salary varied upward because holiday or leave hours were added to the paycheck itself, and in fact, some of those cases use language that indicate a different result would be merited if the salary

7

### III.     THE COURT DENIES RECONSIDERATION ON ELEMENT 4

Defendant's argument that the Court should reconsider its finding regarding element four fails. Defendant points to no "controlling decisions or data that the court overlooked" in its analysis of the fourth element of the FWW scheme—whether the parties had a clear, mutual understanding that Defendant would pay Plaintiffs their fixed salary regardless of the number of hours worked. Defendant merely rehashes its former argument to the effect that Plaintiffs'

---

fluctuated. *See Teblum*, 2006 WL 288932, at *8 (Defendant did "not run afoul of [the FWW regulation] simply by making deductions from an FWW employee's nonproductive time bank for hours an employee does not actually work *so long as the employee receives the same weekly base salary*") (emphasis added); *Mitchell*, 428 F. Supp. 2d at 736, n.16 (stating that "it is permissible to substitute or reduce . . . accrued leave . . . for the time an employee is absent from work, even if it is less than a full day, without affecting the salary basis of payment, if by substituting or reducing such leave the employee receives in payment an amount *equal to his or her guaranteed salary*") (emphasis added) (quoting DOL Wage and Hour Admin. Op., 1997 WL 970567 (July 23, 1997)). Along similar lines, some courts, in addressing hours-based or time-based bonuses or premiums, have used language suggesting that small increases in salaries resulting from the application of holiday or leave policies, even if they are not bonuses or premiums, could violate the FWW's requirements. *See, e.g.*, *Adeva*, 2010 WL 97991, at *2–3 ("The Court is not convinced that Defendants pay Plaintiffs 'a fixed salary that does not vary with the number of hours worked during each workweek (excluding overtime premiums).' The record demonstrates that Plaintiffs' compensation for non-overtime hours varied, depending upon earned . . . holiday pay or day-off pay. The Court is convinced that due to such payments, Plaintiffs cannot receive the fixed salary required to apply the FWW.") (citations omitted); *Ayers*, 2007 WL 646326, at *8 (explaining that the FWW scheme "is intended to cover cases in which 'a salaried employee whose hours of work fluctuate from week to week [reaches] a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many....'" (quotation omitted)).

On the other hand, as courts have suggested in the context of distinguishing between impermissible hours-based bonuses or premiums and performance-based salary enhancements, *see, e.g.*, *Wills*, 981 F. Supp. 2d at 256–61, it can be argued that the rationale for not permitting holiday and day-off premiums under the FWW scheme should not be applied to the use of holiday and leave-banked time to supplement a salary, even where it results in a slight increase in salary.

The parties' failure to address this unsettled legal issue is yet another reason that the Court cannot find at this stage of the proceedings that, as a matter of law, Plaintiffs were properly paid fixed salaries under the FWW scheme, regardless of occasional slight increases in their salary due to the application of Defendant's holiday and leave time policies. Indeed, this issue will have to be briefed in connection with any trial in this matter.

Overtime Compensation Consent Agreement ("Compensation Agreement") is not ambiguous, an argument that the Court explicitly rejected in its 3/31/16 Order. There is no basis for the Court to alter its conclusion that the language of the Compensation Agreement is itself internally inconsistent—in one place stating that Plaintiffs' salaries represented "straight time compensation for all hours worked" and would not fluctuate regardless of whether Plaintiffs worked more or less than 40 hours in a week, but elsewhere explaining that Plaintiffs would be paid at a fixed regular hourly rate for the first 40 hours that they worked, and then only half that rate for hours worked over 40. *See* 3/31/16 Opinion, 176 F. Supp. 3d at 198. The Court reaffirms its finding that there remains a genuine issue of material fact as to whether there existed a clear mutual understanding that Plaintiffs' salaries would compensate them for all hours worked, whether above or below 40.

## IV. CONCLUSION

The Court thus reverses its denial of summary judgment to Defendant on the second element of the FWW scheme solely as to Plaintiff Kralick and otherwise denies reconsideration. This action shall proceed to trial on two questions—first, whether Defendant paid Plaintiffs Ramos, Rodriguez, and Emerson their fixed salaries regardless of the number of hours worked, and second, whether there existed a clear mutual understanding as to all Plaintiffs that their fixed salaries were intended to compensate them for every hour actually worked, rather than for some fixed number of hours.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 24, 2017
      Brooklyn, New York